AFSHIN SIMAN
LAW OFFICE OF AFSHIN SIMAN
11040 Santa Monica Boulevard
Suite 212
(424) 229-7339
siman@simnalwfirm.com

RACHEL KAUFMAN
KAUFMAN, P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881
rachel@kaufmanpa.com

[Additional counsel appearing on signature page.]

*Attorneys for Plaintiff and the Putative Class*

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JORGE VALDES**, individually on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>   v.<br><br>**COLDWELL BANKER REAL ESTATE, LLC,** a California limited liability company, and **NRT, LLC**, a Delaware limited liability company,<br><br>            Defendants. | **CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMAND** |

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Jorge Valdes ("Plaintiff Valdes" or "Valdes") brings this Class Action Complaint and Demand for Jury Trial against Defendants Coldwell Banker Real Estate LLC, ("Coldwell Banker") and NRT, LLC ("NRT") to stop both Defendants from directing realtors to violate the Telephone Consumer Protection Act by making unsolicited autodialed calls to consumers *without their consent*, including calls to consumers registered on the national Do Not Call registry ("DNC"), and to otherwise obtain injunctive and monetary relief for all persons

injured by the conduct of Defendants. Plaintiff Valdes, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## INTRODUCTION

1.  Coldwell Banker is a worldwide real estate franchise with offices in 49 countries.[1] Coldwell Banker provides training and direction to all of Coldwell Banker branded brokerages, including NRT, which operates Coldwell Banker brokerages throughout the US and does business as "Coldwell Banker Residential Brokerage."[2]

2.  Coldwell Banker and NRT jointly train NRT's realtors.

3.  Through this training, Coldwell Banker and NRT direct realtors to cold call consumers to sell them Coldwell Banker's realty services. This includes specific instructions to call consumers who have previously listed their properties for sale with other realtors, but whose listings with those other realtors expired without a sale of the property.

4.  In addition to directly instructing realtors to make unsolicited cold calls to obtain listings, Coldwell Banker and NRT provide realtors with telephone numbers and other analytics for identifying leads to cold call, scripts for the cold calls, and preferred pricing from Coldwell Banker's partner vendors for other cold calling related training and products, including autodialers.

5.  Ultimately, Coldwell Banker's and NRT's marketing plan for NRT realtors involves cold calling consumers, with a focus on calling consumers who have recently expired property listings. This is troubling since cold calling consumers without consent violates the TCPA.

6.  In Plaintiff Valdes' case, Coldwell Banker's marketing plan resulted in him receiving unsolicited, autodialed calls from 3 different Coldwell Banker and NRT realtors to his cellular phone number registered on the DNC. This all occurred after the multiple listing service

---

[1] https://www.coldwellbanker.com/about
[2] https://www.nrtllc.com/our-companies/coldwell-banker-residential-brokerage/california-greater-los-angeles

listing for Plaintiff's property, which was maintained by Plaintiff's former realtor and which did not include any of Plaintiff's telephone numbers, was removed from the multiple listing service without Plaintiff having sold his home.

7. In response to these calls, Plaintiff Valdes files this lawsuit seeking injunctive relief, requiring Defendants to cease from directing realtors to violate, and otherwise ratifying realtors violations of, the Telephone Consumer Protection Act by placing unsolicited autodialed calls to consumers, including consumers that have registered their telephone numbers on the DNC, as well as an award of statutory damages to the members of the Classes and costs.

## PARTIES

8. Plaintiff Jorge Valdes is a resident of Tustin, California.

9. Defendant Coldwell Banker is a California limited liability company with its headquarters located in Madison, New Jersey. Coldwell Banker was founded and incorporated in this District and conducts business throughout this District, California, and the United States.

10. Defendant NRT is a Delaware limited liability company with its headquarters located in Madison, New Jersey. NRT conducts business throughout this District, California, and the US.

## JURISDICTION AND VENUE

11. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

12. This Court has personal jurisdiction over Defendants and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants do significant business in this District and because the wrongful conduct giving rise to this case occurred in this District. Venue is additionally proper because Plaintiff resides in this District and the calls were directed towards Plaintiff in this District.

# COMMON ALLEGATIONS

## Coldwell Banker and NRT Direct Realtors to Cold Call Consumers

13.  Coldwell Banker and NRT direct realtors to use, and ratify realtors' use of, certain proscribed practices to market Coldwell Banker' realty services, including unsolicited, autodialed calls to cellular telephone numbers and other telephone numbers registered on the DNC.

14.  Through a vast array of training programs, Defendants instruct realtors that, in order to successfully market their realty services for the realtors' and Defendants' joint benefit, realtors need "to make cold calls" and "[t]o follow scripts" that Defendants supply them.[3]

15.  As Defendants' realtors understand it, Defendants "push" the practice of "reading scripts and cold calling total strangers" notwithstanding "the FEDERAL DO NOT CALL law" and how much people "hate telemarketers."[4]

16.  In connection with this general direction to cold call consumers, Defendants supply their realtors with telephone numbers and other data relating to prospective leads for property listings:

---

[3] https://youtu.be/OP5A65vv2Tk?t=54
[4] https://activerain.com/questions/show/43937/how-do-you-overcome-fear-of-the-phone-



[5,6]

*******

[7]

---

[5] https://www.coldwellbanker.com/careers/production-power/cbx-tech-suite.html
[6] https://youtu.be/ee2dm36d6QA?
[7] https://www.youtube.com/watch?v=ee2dm36d6QA&feature=youtu.be&t=283

17. As Coldwell Banker has expressly acknowledged, the leads it supplies to realtors to cold call are not checked or scrubbed against the national Do Not Call registry as required under the TCPA.[8]

18. Additionally, Defendants partner with certain vendors to provide their realtors with additional cold calling training and tools, including Tom Ferry, a well-known real estate coach.[9]

19. Tom Ferry's customized program for Defendants' realtors is predicated on cold calling consumers and includes scripts for various types of cold calls, including specifically those with previously expired listings:

## EXPIREDS

### DIALOGUE #1

"Hi … I am looking for _____. This is _____ with _____. I noticed your home was no longer on the market. I was calling to see … do you still want to sell it?

[If it is clear they are getting lots of calls, use these effective lines]

• Are you just taking your home off the market?

• Are you getting a lot of calls?

• These agents are like rats coming out of the woodwork…aren't they?

• Can you imagine if you had to work with these people everyday like I do? [10]

20. In connection with Defendants directions to realtors to market themselves through cold calls to consumers, Defendants endorse agents' purchases of leads and autodialers to call those leads from various vendors. This includes partnering directly and through Tom Ferry with

---

[8] https://youtu.be/ee2dm36d6QA?t=368
[9] https://www.prnewswire.com/news-releases/coldwell-banker-real-estate-partners-with-tom-ferry-to-provide-a-variety-of-customized-agent-coaching-programs-300146449.html
[10] http://www.tomferry.com/wp-content/uploads/2016/08/Agent-Script-Book.pdf

CLASS ACTION COMPLAINT
-6-

companies such as Landvoice and RedX, both of which specialize in providing leads associated with properties that were previously listed on a multiple listing service, but that expired or were otherwise removed without a sale, and both of which supply an autodialer to facilitate calling the leads.

21. Ultimately, Defendants direct realtors to cold call consumers without consent and/or know or should know that realtors are doing so in violation of the TCPA, but fail to stop them anyway.

## PLAINTIFF'S ALLEGATIONS

**Defendants' Realtors Made Unsolicited, Autodialed Cold Calls to Plaintiff**

22. On February 8, 2010, Plaintiff Valdes registered his cellular phone number on the DNC to avoid receiving unsolicited phone calls. Since that time, the cellular phone number has been primarily for personal use. Plaintiff has never held the cellular phone number out to the public in connection with a business.

23. Valdes had a property listed for sale through a realtor, which he withdrew from the market on May 15, 2018. The listing for Plaintiff's property never included Plaintiff's cellular phone number (or any other number associated with him) as a means for inquiring about the property.

24. As a result of having his listing removed, on May 26, 2018 at 9:51 AM, Valdes received an unsolicited phone call on his cellular phone from one of Defendants' realtors using phone number 949-280-0322.

25. Months later, when Valdes' agreement with his realtor expired on October 29, 2018, Defendants' realtors against called him.

26. On October 29, 2018 at 9:14 AM, Valdes received a second unsolicited phone call on his cellular phone from one of Defendants' realtors using phone number 949-574-3550.

27. On one or more of these above calls, Plaintiff told them that he was on the do not call list and/or to stop calling.

28. On February 7, 2019 at 10:15 AM, Valdes received a third unsolicited call on his cellular phone from one of Defendants' realtors using phone number 714-988-4040.

29. The realtor began the call by asking if Valdes was still in the market to sell his home. Valdes asked the realtor how the realtor acquired his phone number. The agent replied that he used RedX to get Plaintiff Valdes' cell phone number. Valdes then told the agent not to call him back and ended the call.

30. On information and belief, this call was autodialed. In fact, RedX supplies list of leads that are configured to be loaded into a number of different autodialers, all of which have the capacity to store and automatically dial all of the numbers from the list without human intervention and to dial multiple numbers at one time.

31. Plaintiff does not have a relationship with Defendants or their realtors and has never consented to be contacted by them. To the contrary, Plaintiff registered his cell phone number with the DNC and hired a realtor when he was trying to sell his property specifically to avoid such calls.

32. Defendants' unauthorized telephone calls harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, and disturbed Valdes' use and enjoyment of his cellular phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

33. Seeking redress for these injuries, Valdes, on behalf of himself and Classes of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*., which prohibits autodialed calls to cellular phone numbers and other unsolicited calls to phone numbers registered on the DNC.

## CLASS ALLEGATIONS

### Class Treatment Is Appropriate for Plaintiff's TCPA Claims

34. Plaintiff Valdes brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and all others similarly situated and seeks certification of the following Classes:

> **Autodialed No Consent Class:** All persons in the United States who from four years prior to the filing of this action (1) one of Defendants' realtors called, (2) on the person's cellular telephone, (3) for substantially the same reason Defendants' realtors called Plaintiff (4) using substantially the same dialing equipment as Defendants' realtors used to call Plaintiff, and (5) for whom Defendants claim (a) they obtained prior express written consent in the same manner as Defendants claims they supposedly obtained prior express written consent to call Plaintiff, or (b) they did not obtain prior express written consent.

> **Do Not Call Registry Class**: All persons in the United States who from four years prior to the filing of this action (1) one of Defendants' realtors called more than one time, (2) within any 12-month period, (3) where the person's telephone number had been listed on the national Do Not Call registry for at least thirty days, (4) for substantially the same reason Defendants' realtors called Plaintiff, and (5) for whom Defendants claim (a) they obtained prior express written consent in the same manner as Defendants claims they supposedly obtained prior express written consent to call Plaintiff, or (b) they did not obtain prior express written consent.

> **Internal Do Not Call Class**: All persons in the United States who from four years prior to the filing of this action (1) one of Defendants' realtors called more than one time (2) within any 12-month period, (3) for substantially the same reason Defendants' realtors called Plaintiff.

35. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or its

CLASS ACTION COMPLAINT
-9-

parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against either Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the Class definitions following appropriate discovery.

36. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

37. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) whether Defendants systematically placed autodialed telephone calls to Plaintiff and consumers;

(b) whether Defendants systematically made multiple telephone calls to Plaintiff and consumers whose telephone numbers were registered with the DNC;

(c) whether Defendants failed to implement policies and procedures for maintaining a list of persons who request not to be called by Defendants before engaging in telemarketing;

(d) whether Defendants placed calls to Plaintiff and consumers without having the necessary prior express written consent required for such calls;

(e) whether Defendants' conduct constitutes a violation of the TCPA; and

(f) whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct.

38. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Classes, and the Defendants have no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to the Classes.

39. **Appropriateness**: This class action is also appropriate for certification because the Defendants have acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendants' business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendants' misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Autodialed No Consent Class)**

40. Plaintiff repeats and realleges paragraphs 1 through 39 of this Complaint and incorporates them by reference.

41. Defendants' realtors made unwanted solicitation calls to cellular telephone numbers belonging to Plaintiff and the other members of the Autodialed No Consent Class using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

42. These solicitation telephone calls were made *en masse* without the prior express written consent of Plaintiff and the other members of the Autodialed No Consent Class.

43. Defendants' realtors made these calls, negligently or willfully and knowingly.

44. Defendants are vicariously liable for their realtors calls because they directed and/or ratified the realtors' actions.

45. Defendants have, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendants' conduct, Plaintiff and the other members of the Autodialed No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

**SECOND CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Valdes and the Do Not Call Registry Class)**

46. Plaintiff repeats and realleges paragraphs 1 through 39 of this Complaint and incorporates them by reference.

47. The TCPA's implementing regulations provide that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his

or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government." 47 C.F.R. § 64.1200(c).

48. This regulation is "applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers." 47 C.F.R. § 64.1200(e).

49. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

50. Defendants' realtors initiated telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the DNC.

51. These solicitation telephone calls were made *en masse* without the prior express written consent of Plaintiff and the other members of the Do Not Call Registry Class.

52. Defendants' realtors made these calls, negligently or willfully and knowingly.

53. Defendants are vicariously liable for their realtors calls because they directed and/or ratified the realtors' actions.

54. Defendants have, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendants' conduct, Plaintiff and the other members of the Do Not Call Registry Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

## THIRD CAUSE OF ACTION
### Telephone Consumer Protection Act
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Internal Do Not Call Class)**

55. Plaintiff repeats and realleges paragraphs 1 through 39 of this Complaint and incorporates them by reference.

56. Under 47 C.F.R. § 64.1200(d): No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

47 C.F.R. § 64.1200(d).

57. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

58. Defendants' realtors initiated telephone solicitations to Plaintiff and members of the Internal DNC Class notwithstanding Defendants and their realtors' failure to implement internal procedures for maintaining a list of persons who request not to be called and/or by implementing procedures that do not meet the minimum standards for initiating telemarketing calls.

59. Defendants are vicariously liable for their realtors calls because they directed and/or ratified the realtors' actions.

CLASS ACTION COMPLAINT
-15-

60. Defendants have, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Stop Class are each entitled to up to $1,500 for each violation.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Valdes, individually and on behalf of the Classes, prays for the following relief:

a. An order certifying the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing his attorneys as Class Counsel;

b. An award of actual and/or statutory damages for the benefit of Plaintiff and the Classes, and costs;

c. An order declaring that Defendants' actions, as set out above, violate the TCPA;

d. An injunction requiring the Defendants to cease all unsolicited calling activity, to implement sufficient TCPA related policies and procedures, and to otherwise protect the interests of the Classes; and

e. Such further and other relief as the Court deems just and proper.

**JURY TRIAL DEMAND**

Plaintiff requests a jury trial.

Respectfully Submitted,

**JORGE VALDES**, individually and on behalf of those similarly situated individuals

Dated: April 11, 2019

By: /s/ *Afshin Siman*
Afshin Siman (Cal bar no. 309956)
Law Office of Afshin Siman
11040 Santa Monica Boulevard, Suite 212
Los Angeles, CA 90025
Telephone: (424) 229-9778
siman@simanlawfirm.com

Rachel E. Kaufman (Cal Bar no. 259353)
rachel@kaufmanpa.com
Avi R. Kaufman*
kaufman@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

Stefan Coleman*
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, P.A.
201 S. Biscayne Blvd, 28th Floor
Miami, Fl 33131
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

*Attorneys for Plaintiff and the putative Classes*

*\*Pro Hac Vice motion forthcoming*